IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMER INDUSTRIAL TECHNOLOGIES, INC., | : | JUDGE McLAUGHLIN |
| Plaintiff, | : | |
| v. | : | CASE NO.: 02-CV-2902 |
| MLEA, INC. and JOHN K. WIEDEMANN, | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO WITHDRAW
REQUEST FOR PRELIMINARY INJUNCTION**

I. **INTRODUCTION**

Defendants, MLEA, Inc. and John K. Wiedemann (collectively, "Defendants"), do not oppose Plaintiff's Motion to Withdraw Request for Preliminary Injunction. Plaintiff's Memorandum of Law in support of the Motion attempts to justify prosecuting until August 9th its request for a preliminary injunction. In that attempt, however, Plaintiff omits key parts of the record and makes numerous incorrect and unsupportable statements that cannot be left unanswered.

II. **ARGUMENT**

Mr. Wiedemann performed contract engineering work for MLEA before being hired by MLEA as a full time employee, and after his January 22, 2002 termination by AIT. The record shows that MLEA independently prepared its February 8, 2002 bid on the Savannah River Project and did not use any AIT pricing or other information in that bid. All that Plaintiff's discovery has found was that a portion of Mr. Wiedemann's contract work involved design

engineering work on the Savannah River Project after the Project had been awarded to MLEA on March 4, 2002. Subsequently, and after he was hired by MLEA as a fulltime employee, Wiedemann performed more engineering work on the Savannah River Project. In its Memorandum, referring to one of the three invoices from Mr. Wiedemann to MLEA for that interim contract engineering work, Plaintiff states: "At least one of the invoices appears to establish Wiedemann's use of AIT's confidential and proprietary information for his own benefit and the benefit of MLEA." See Pl.'s Memo of Law, at 3, n.1. Plaintiff also states: ". . . discovery has uncovered evidence further substantiating that Wiedemann and MLEA have utilized AIT's proprietary and confidential information in performing the actual design work for the Savannah River Project." See Pl.'s Memo of Law, at 3.

It is irresponsible for Plaintiff to represent to the Court that any evidence in this case "appears to establish" or substantiates the use of "AIT confidential and proprietary information" in MLEA's performance of the design work for the Savannah River Project. The invoice to which Plaintiff refers, a copy of which is attached as Exhibit A, establishes only that Wiedemann performed mechanical engineering design services on the Savannah River Project after he had been terminated by AIT and after the project was awarded to MLEA. It is simply reckless to state that it somehow supports a conclusion that Mr. Wiedemann used AIT's confidential or proprietary information to perform that design engineering work. The invoice does not offer any such support.[1]

---

[1] After discovery established that AIT confidential or proprietary information was *not* used by MLEA in the preparation of its winning bid for the Savannah River Project – thereby rebutting Plaintiff's original theory – Plaintiff conceived of its current theory (vintage about July 30): that MLEA, through Mr. Wiedemann, used AIT confidential or proprietary information in the actual performance of the Savannah River Project contract. But AIT has yet to give the Court or Defendants even a clue as to what that information is.

After being terminated by AIT, Wiedemann was free to do design work on the Savannah River Project, having never entered into any form of non-compete agreement with AIT.  See Spring Steels, Inc. v. Molloy, 162 A.2d 370, 374 (Pa. 1960) (after termination of his agency, in absence of restrictive agreement, agent can properly compete with his principal as to matters for which he has been employed).  Mr. Amer, the President of AIT, admitted that Mr. Wiedemann was free to compete after being terminated by AIT.  See Amer Dep., at 181, attached hereto as Exhibit B.  When Mr. Wiedemann was hired by AIT on October 20, 2001 for a three-month probationary period, he already had more than twenty years of experience in designing and working on pressure vessels.  When AIT fired Mr. Wiedemann on January 22, 2002, he was free to continue to practice his profession, which included work for MLEA on pressure vessels of the kind specified for the Savannah River Project.  And that is all that discovery shows Mr. Wiedemann did.

More disturbing is that Plaintiff, despite repeated requests by Defendants, has been either unwilling or unable to identify any trade secrets or confidential or proprietary information whatsoever that Wiedemann allegedly used to design the Savannah River Project deliverables for MLEA.  AIT's position is now, essentially, "show us Defendants' work product, and we'll look at it and tell you what we think our proprietary information is." Unfortunately for Plaintiff, the law of trade secrets does not operate that way.  The *existence* of, and *identification* of, a trade secret is a *prerequisite* to AIT's claims.  Without first identifying the alleged trade secrets, Plaintiff cannot even plead the elements of its claim.  See SI Handling Systems v. Heisley, 753 F.2d 1244, 1255 (3d Cir. 1985) (under Pennsylvania law, Plaintiff must show that the information at issue constitutes a trade secret).  Plaintiff repeatedly recites in its Complaints and memoranda the term "proprietary and confidential information" in a mantra-like fashion, as

if mere repetition creates admissible evidence. Since first learning (on April 2, 2002; see ¶ 18 of the first Complaint) that MLEA won the Savannah River Project contract, AIT has yet to specify just what "proprietary and confidential information" Mr. Wiedemann supposedly spirited away.

The most troubling aspect of this litigation, however, is that a simple phone call to Mr. Gough, the President of Accurate Machine, would have – or should have – put to rest Plaintiff's suspicion that it failed to obtain the Savannah River Project contract due to some wrongdoing by Defendants. Mr. Gough's June 13, 2002 Affidavit, attached as Exhibit B to Defendants' first Motion to Dismiss, explained that AIT finished dead last in the bidding process, even behind MECA, whose bid price was _higher_ than AIT's price. Mr. Gough also stated in his Affidavit (¶18) that he had never been contacted by any counsel for AIT. And at his July 12, 2002 deposition, Mr. Gough testified:

> Q: At any time before May 18th – May 15, 2002 [the date AIT filed suit], were you contacted by anyone claiming to be legal counsel for AIT?
> A: No.
> Q: Do you know if anyone in your company was contacted by anyone holding themselves out as representing – being lawyers for AIT?
> A: Not to the best of my knowledge.
> Q: Had you been contacted by counsel for AIT before May 15th, 2002, would you have provided them the same information you provided in your Affidavit?
> A: Oh, absolutely.

Gough Dep., at 70- 71, attached hereto as Exhibit C.

Between April 2, 2002 when AIT learned that MLEA won the Savannah River Project contract and filing suit on May 15th, AIT never contacted Accurate Machine to ascertain (1) the basis for the award of (2) the status of the design work on the project. Instead of contacting Mr. Gough, AIT filed suit, only to learn by Defendants' June 18, 2002 Motion to Dismiss that the project was nearly complete and that AIT never had a chance of winning that

contract, even if MLEA had never even bid. The most rudimentary investigation would have prompted any responsible litigant to dismiss any thought that they had a viable claim for injunctive relief.

### III. CONCLUSION

Plaintiff's Motion to Withdraw Request for Preliminary Injunction is riddled with gratuitous misstatements. The request for injunctive relief was baseless from the outset, and Plaintiff withdrew that request, because it could never have prevailed in seeking that relief.

Respectfully submitted,

_____
PEPPER HAMILTON LLP
Philip J. Katauskas
Robert S. Nix
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for Defendants

Date:   August 14, 2002

## **CERTIFICATE OF SERVICE**

I, Philip J. Katauskas, certify that a true copy of the foregoing Defendants' Response to Plaintiff's Motion to Withdraw Request for Preliminary Injunction was served via hand delivery, this 14th day of August, 2002 upon the following Attorney for Plaintiff.

> Donald D. Gamburg, Esquire
> Blank Rome Comisky & McCauley LLP
> One Logan Square
> Philadelphia, PA  19103-6998

_____
Philip J. Katauskas