```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


AMER INDUSTRIAL TECH., INC.,     :
          Plaintiff              :    CIVIL ACTION
                                 :
     v.                          :
                                 :
MLEA, INC. and JOHN K. WIEDEMANN, :   NO. 02-2902
          Defendants             :
```

MEMORANDUM AND ORDER

McLaughlin, J.                                      March _____, 2003

      Amer Industrial Technologies, Inc. ("AIT") has sued John K. Wiedemann, its former employee, and MLEA, Inc., Mr. Wiedemann's current employer, for misappropriation of trade secrets and related offenses. While employed with AIT, Mr. Wiedemann worked on bid proposals to Accurate Machine Products Corporation ("Accurate") for the design and fabrication and then the design only of certain equipment for the Savannah River Nuclear Project ("Savannah Project"). After his termination by AIT, Mr. Wiedemann worked as a consultant to and then employee of MLEA which was awarded the design-only phase of the Savannah Project. The parties have filed cross motions for summary judgment. The Court will grant the defendants' motion and deny the plaintiff's motion.

I.  <u>Facts</u>

The facts are not in dispute, only the inferences to be drawn from those facts.  Mr. Wiedemann was hired by AIT on or about October 20, 2001 for a probationary three-month period, and worked there until January 22, 2002, when AIT terminated his employment.  He was an employee at will and did not sign an employment contract or a covenant not to compete.

One of the projects Mr. Wiedemann undertook for AIT was to prepare a bid to be submitted to Accurate for the design and fabrication of certain equipment at the Savannah Project.  In preparing that bid, Mr. Wiedemann had conversations in November 2001 with Paul Manzon of MLEA about the Savannah Project.  Those conversations were about MLEA subcontracting with AIT for design work for certain components of the Savannah Project, and on November 20, 2001, MLEA did submit a bid to AIT for part of the design work for the Savannah Project.  AIT ultimately submitted a subcontractor bid to Accurate on December 26, 2001 for the design and fabrication of certain equipment for the Savannah Project. On January 15, 2002, Accurate submitted a bid for design and fabrication of the Savannah Project to the Westinghouse Savannah River Company ("Westinghouse"), which bid incorporated the bid submitted to Accurate by AIT.

Shortly thereafter, still in mid-January 2002,

-2-

Westinghouse told Accurate that, for budgetary reasons, it had decided to split the Savannah Project into two separate phases, design and fabrication – entailing two separate contracts. Westinghouse then asked Accurate to submit a bid for the design-only phase of the Project.

As a result, Accurate immediately sought new competitive, fixed-price bid proposals for the design-only phase of the Project.  In soliciting the new bids for the design-only work, Accurate provided each prospective bidder with the same technical information upon which to base any bid proposals.  In response to this solicitation, Accurate received bids from three companies.

On January 18, Accurate received a bid from AIT for $127,000.  On February 8, 2002, Accurate received a bid from MLEA for $91,000.  On February 18, 2002, Accurate received a bid from MECA for $129,498.  On March 4, 2002, after evaluating each of the bid proposals, Accurate awarded the purchase order for the design-only phase of the Savannah Project to MLEA.

While employed by AIT, Mr. Wiedemann met Mr. Gough, the president and general manager of Accurate, when he toured the AIT facility in early January 2002, before the Savannah Project had been split into design and fabrication phases.  At that time, AIT told Mr. Gough that Mr. Wiedemann would be responsible for AIT's

overall engineering and design work on the Savannah Project.

Mr. Wiedemann was terminated by AIT on January 22, 2002. After his termination, he informed Mr. Gough that he had been terminated from AIT, and that he would no longer be responsible for the AIT bid proposal for the Savannah Project. After he was terminated by AIT, Mr. Wiedemann informed MLEA that Accurate was seeking bid proposals for the Savannah Project and that the project could present MLEA with many possible opportunities for work.

Between January 28, 2002 and February 22, 2002, Mr. Wiedemann performed some contractual consulting work for MLEA. The majority of this consulting work concerned the BOC Edwards Ammonia Plant in Taiwan. Mr. Wiedemann then went on vacation. When Mr. Wiedemann returned from vacation, he again performed some contract consulting work for MLEA between March 11, 2002 and March 22, 2002. Most of this consulting work had nothing to do with the Savannah Project or with AIT. His work concerned the BOC $NF_3$ Project in South Africa. On March 18, 2002, Mr. Wiedemann was hired by MLEA as a full-time employee. Prior to being hired full-time by MLEA, Mr. Wiedemann billed eight to ten hours to the Savannah Project. His work on the Savannah Project consisted of recommending to MLEA the disciplines needed to do the design of the project and the amount of time that would be

needed for his discipline. He also performed design work on the project after he became a full-time employee of MLEA. By the end of the July 2002, MLEA had completed all of the work on the Savannah Project contract.

II. The Litigation

On May 15, 2002, the plaintiff filed a complaint against MLEA and Mr. Wiedemann. The complaint made claims against both defendants for misappropriation of AIT's trade secrets regarding the Savannah Project; tortious interference with AIT's contractual business relationship with Accurate; tortious interference with AIT's prospective business with Kumsung Engineering and CTCI; and civil conspiracy. It also claimed that Mr. Wiedemann breached his fiduciary duty to AIT by using AIT's proprietary information for MLEA's benefit.

The complaint requested monetary damages and an immediate and permanent injunction forcing the defendant to cease the actions alleged in the complaint, among other things. The request for injunctive relief was also made in the plaintiff's motion for preliminary and permanent injunctive relief filed on the same day as the complaint.

On June 18, 2002, the defendants filed their opposition to the plaintiff's motion for preliminary and permanent

injunction, and a motion to dismiss the plaintiff's complaint under Fed. R. Civ. P. 12(b)(6).  On July 18, 2002, the plaintiff filed an amended complaint, thereby mooting the defendants' motion to dismiss the original complaint.  The amended complaint added a claim of conversion and unjust enrichment against MLEA for wrongfully taking and using AIT's proprietary Savannah Project information for its benefit.

On August 9, 2002, the plaintiff withdrew its request for injunctive relief as it conceded its claim of tortious inference with prospective business contracts.

On August 21, 2002, the defendants moved to dismiss the plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(6).  On August 23, 2002, after a conference among the Court and the parties, the Court dismissed this motion to dismiss without prejudice; the Court allowed the defendants to resubmit the motion as one for summary judgment after discovery closed.

The defendants filed their motion for summary judgment on December 23, 2002; the plaintiff filed its motion for summary judgment on January 10, 2003.  The Court held oral argument on both motions on January 30, 2003.

AIT's remaining claims against both defendants are for (1) misappropriation of AIT's trade secrets regarding the Savannah Project; (2) tortious interference with AIT's

contractual business relationship with Accurate; and (3) and civil conspiracy.  AIT also makes a claim against Mr. Wiedemann for breach of his fiduciary duty to AIT, and against MLEA for conversion of AIT's proprietary information and unjust enrichment from its use.

III. Discussion

All of the plaintiff's claims depend on its allegation that Mr. Wiedemann misappropriated its trade secrets when he went to work for MLEA.  At the hearing on the motions, counsel for the plaintiff explained what trade secrets it contends were misappropriated: "the specific know how that Mr. Wiedemann acquired during his three month employment with AIT, regarding a very specific project, the Savannah River Project." Tr. at 3.[1] The primary trade secret that the plaintiff contends was told to MLEA was the price that AIT bid for the Savannah Project.  Both Mr. Wiedemann and representatives of MLEA deny that Mr. Wiedemann

---

[1] At the hearing on the motions, the Court asked counsel for the plaintiff if the plaintiff was claiming that Mr. Wiedemann's telling Mr. Gough that he, Mr. Wiedemann, had been terminated from AIT was a breach of fiduciary duty.  Counsel said no.  The Court asked if the plaintiff was claiming that Mr. Wiedemann's informing MLEA that Accurate was seeking design-only bid proposals for the Savannah Project was a breach of fiduciary duty; counsel for the plaintiff again said no.  The plaintiff is not contesting that Mr. Wiedemann did anything wrong in these two instances. Tr. at 5.

ever told MLEA, AIT's bid price.  The plaintiff relies on circumstantial evidence to demonstrate that Mr. Wiedemann did tell MLEA the price that AIT bid.[2]

The circumstantial evidence consists of the fact that: (1) MLEA prepared the bid in three days; (2) MLEA's bid was 30% less than AIT's; and (3) the defendants concealed during the discovery in this case Mr. Wiedemann's involvement in the bid process for MLEA.  The plaintiff contends that a jury could infer misappropriation of trade secrets from these three facts.

The defendants argue that the undisputed facts show that there was no concealment during the discovery phase of the litigation and that a reasonable juror could not infer misappropriation of the plaintiff's trade secrets from facts 1 and 2.  The Court agrees with the defendants as to facts 1 and 2.  The plaintiff prepared the bid in one day.  It took MLEA three

---

[2] In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).  A motion for summary judgment shall be granted where all of the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c).  The moving party has the initial burden of demonstrating that no genuine issue of material fact exists.  Once the moving party has satisfied this requirement, the non-moving party must present evidence that there is a genuine issue of material fact.  The non-moving party may not simply rest on the pleadings, but must go beyond the pleadings in presenting evidence of a dispute of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

days.  The plaintiff argues that it had spent three months on the design and fabrication bid so it was able to prepare the design-only bid in one day.  It contends that MLEA could not have prepared its bid in three days without AIT's proprietary information.  But the plaintiff's argument is based on speculation, and not reasonable inference from facts.  MLEA had worked on the Savannah Project earlier when it submitted a bid to AIT that was included in AIT's first bid to Accurate.  MLEA, therefore, had some background knowledge of the Savannah Project before it started to prepare the bid.  There is no logical basis on which to infer that it would have taken MLEA more than three times longer than AIT to prepare the bid if it had not been told information about AIT's bid by Mr. Wiedemann.

   Nor does the Court see any logic in the plaintiff's argument about the inference to be drawn from the fact that MLEA's bid was 30% less than AIT's.  If MLEA did know that AIT had bid $127,000, it would make no economic sense for it to bid 30% less in a fixed-price situation.  MLEA would have every incentive to bid just far enough below AIT to be awarded the project.  The plaintiff argued that MLEA had to go as low as it did to entice Accurate into accepting their bid.  But there is nothing in the record on this point.  It would be speculation to make that conclusion.

The third category of evidence which the plaintiff argues supports an inference that Mr. Wiedemann gave AIT's trade secrets to MLEA is what the plaintiff describes as the defendants' concerted effort to conceal Mr. Wiedemann's role in the Savannah Project.  The plaintiff alleges that the defendants concealed the fact that Mr. Wiedemann, when he was a consultant for MLEA, worked for 8 to 10 hours on the Savannah Project before the bid was awarded to MLEA.  The alleged concealment consists of statements in affidavits by Mr. Wiedemann and other MLEA representatives that he had not worked on the Savannah Project as a consultant.

It is correct that the affidavits said that Mr. Wiedemann had not worked at all on the Savannah Project in January and February 2002 when he was a consultant to MLEA.  Mr. Wiedemann testified in his deposition, however, that he had spent eight to ten hours assisting MLEA in the preparation of the bid.  Mr. Wiedemann reviewed the specifications that came from Accurate, suggested the five disciplines that needed to be involved in the project, and estimated the hours required for his discipline – mechanical/structural work.

The defendants do not deny that the affidavits were not correct.  Counsel for the defendants took responsibility for the error and stated that the affidavits were prepared in haste in

opposition to the motion for a preliminary injunction that was eventually withdrawn by the plaintiff.  He also explained that these eight to ten hours represented only a small portion of the work Mr. Wiedemann did for MLEA during the time he acted as a consultant.  Although the Court is concerned that inaccurate affidavits were submitted to the Court, the Court accepts the explanation of defense counsel.  The witnesses cleared up this discrepancy during depositions.  Mr. Wiedemann gave detailed answers about his involvement prior to the award of the bid to MLEA.

      The plaintiff argues that a jury could conclude from the inaccuracy of the affidavits that the defendants concealed Mr. Wiedemann's involvement in MLEA's bid, and then could conclude from this concealment that the defendants misappropriated the plaintiff's trade secrets.  The Court concludes that the inaccuracy of the affidavits is not evidence of concealment, and even if it were, it would be insufficient evidence on which to find that the defendants misappropriated the plaintiff's trade secrets.

      The other major area of alleged concealment involves the plaintiff's claim that the defendants did not produce to the plaintiff the only two documents found on Mr. Wiedemann's laptop that were relevant to this case.  The plaintiff claims that it

was suspicious that, although the plaintiff's expert sent the defendants these documents, the defendants failed to pass them on to the plaintiff after reviewing them.

There is no dispute about the facts relating to this allegation. The plaintiff's computer expert examined Mr. Wiedemann's personal laptop computer that he used for his AIT business. The expert made an index of all documents on the computer and downloaded the documents. He then sent the documents to counsel for the defendants so counsel could review the documents for any privileged documents. The expert sent the index to both counsel for the plaintiff and counsel for the defendants. Counsel for the defendants then sent copies of the documents to the plaintiff's counsel.

There is a series of e-mails between counsel for the parties about the fact that two documents that are on the index were not in the box of documents sent by the defendants to the plaintiff. Counsel for the defendants explained that he sent all documents to the plaintiff's counsel so if the plaintiff's counsel did not get them, they were not in the box that came from the expert. The result was that the expert downloaded the two documents and sent them to both counsel. From these facts, the plaintiff argues that the defendants were trying to conceal the two documents.

Because counsel for the defendants had custody of the documents from the time they came from the plaintiff's expert to the time they were sent to the plaintiff's counsel, the only person who could have concealed the documents is counsel for the defendants. Defense counsel adamantly denied the allegation and submitted the e-mails in support of his position. Not only is there no evidence to defeat the unequivocal statement of an officer of the Court, it would make no sense for anyone to conceal the two documents. They were on the index and still on the hard drive that was in the possession of the plaintiff's expert. Any attempt at concealment would have been obviously futile.

The defendants also make a strong argument that AIT would not have gotten the project even if MLEA had not bid below them because AIT came in third in the bidding behind MLEA and MECA. The plaintiff argues that Accurate only made a recommendation to Westinghouse, and that Westinghouse decided who would be awarded the contract. But the plaintiff did not take any discovery of Westinghouse to dispute Accurate's testimony that Westinghouse followed their recommendation.

Mr. Gough testified that Accurate would have recommended that MECA's bid be accepted if MLEA had not bid. In his final proposal to Westinghouse, Mr. Gough ranked AIT third

among the three bidders, concluding that "there seems to be no compelling reason" for preferring AIT over the other two bidders. Gough Aff. at ¶ 11. Mr. Gough stated that MECA's design capabilities and location made it desirable to Accurate, although its higher price and lack of personnel with experience working on the Savannah River site made it less desirable than MLEA.

  Having read all the parties' submissions carefully and after a hearing on the motions, the Court concludes that summary judgment should be granted for the defendants on all counts. All counts depend on there being sufficient evidence of the defendants' misappropriation of the plaintiff's trade secrets to allow a jury to find for the plaintiff. The plaintiff has presented no such evidence. The plaintiff has not rebutted the sworn testimony of Mr. Wiedemann that he did not tell MLEA about AIT's bid price or any other trade secret information and the sworn testimony of representatives of MLEA that they did not receive any such information.

  An appropriate order follows.